Washburn, J.
This is an action on á bill of exchange claimed to have been drawn by the defendant, the Star Drilling Machine Company, by its agent, I. EL Ford. A jury was waived and the case was submitted to the court upon the evidence. Two issues were raised—one that said Ford had no authority to draw the bill of exchange for and on behalf of the defendant, and the other that the bill had been materially altered after it was executed and issued.
There was considerable evidence offered on the trial which tended to prove that I, EE, Ford was the agent of the defendant *450 company. Much of this evidence was objected to at the time it was offered and much of it should have been rejected, but it is not necessary for the-court now to point out what evidence on that subject was competent and what was not competent, for the reason that it appears from competent evidence that said Ford was a general sales agent for the defendant company, having his office in New York. This fact is- established beyond all peradventure. The plaintiff does not claim that said agent’s authority to execute the bill of exchange in question is an implied authority, growing out of a general custom by which he was permitted to execute similar instruments on behalf of the defendant company, but it is claimed that the correspondence between the defendant company and its agent, Ford, expressly authorized him to execute this bill of exchange.
I may say that the by-laws of the defendant company provided that notes, checks, drafts and bills of exchange necessary for the transaction of the business of the defendant company should be drawn by the secretary and treasurer or by such persons as he might authorize. The facts which it is claimed justify a finding of the court that said Ford had authority to execute this bill of exchange are as follows:
The defendant, the Star Drilling Machine Company, received a letter from New York, dated February 20, 1908, written by the .Export Shipping Company, in which they said: "One of our clients in Australia writes us- his representative will be in New York about March 10th to arrange for some purchases. Will you please send us your catalogue and export price list, so that we can submit same ? ” That letter was forwarded by the defendant, the Star Drilling Machine Company, to its said general sales agent, I. IT. Ford, in New York. The evidence does not disclose a copy of the letter sending it, but it does disclose the answer of Mr. Ford, which was dated February 24, and said: "I have your letter with the one from the Export Shipping Company. Will see them and arrange to give them prices and can show their representative the machine in operation. Thanking you for the inquiry, I am yours truly, I. IT. Ford. ’ ’
Following that Mr. Ford and those in his employ entered into *451 negotiations with the Export Shipping Company, and finally, on April 2d, 1908, reported to the defendant company a sale of that date, in which he says:
"Enclosed herewith will be found order in detail received from the Export Shipping Co., No. 11 Broadway, New York, N. Y., for a No. 20 machine with full equipment for drilling 6-in. diameter holes and for extra tools and finishing tools for the same size holes, also an extra equipment for drilling 4-in. diameter holes. This outfit is to be shipped to Townsville, Queensland, Australia, and as it is to be sent forward with other goods at Brisbane, it is important that the complete outfit be in New York in time for vessel clearing port on the 27th of April. # * * papers are to be made in triplicate, as usual, and sent to this office. Funds for payment of this outfit are in London and will be paid on presentation of draft and shipping documents. This will mean that the money will be in New York about three weeks from date of receipt of outfit at New York, * * * Kindly send us at once an acknowledgment of the receipt of this order, so that we can reassure our customer in regard to the outfit getting here for the vessel leaving April 27th. Yours truly, I. H. Ford.”
On April 4 the Star Drilling Machine Company answered that letter as follows:
"We thank you very kindly for your favor of the 2d enclosing order for No. 20 machine. We note this must be in New York by April 26th. In other words, that it must be shipped from here not later than the 17th or 18th. We are giving the order our very best attention and have no doubt that it will be in New York on time. We are, respectfully yours, Star Drilling Machine Company, per H. A. Hine.”
Said Hine was the secretary and treasurer of the defendant company. The order was filed by the defendant company and forwarded on time .and delivered, and the transaction was closed by Mr. Ford by his drawing the draft in question. He drew the draft, signing it "the.Star Drilling Machine Company, per I. H. Ford,” on the General Supply Company of Townsville, Queensland, Australia, and payable to the order of the Export Shipping ■ Company. The Export Shipping Company sold the *452 draft to the plaintiff, received the money therefor, and taking the'money and the goods, sailed for South America. It subsequently -transpired that there -was no such firm, or company as the General Supply Company of Townsville, Australia, and no funds in London, and that the transaction on the part of the Export Shipping Company was a' swindle of which neither the plaintiff nor the defendant nor its agent had any knowledge. This transaction closing the deal took place from the 25th to the 30th of April, and was entirely without the knowledge of the defendant company, except -as indicated.
On May 11th, 1908,' the defendant company wrote its agent as follows:
“I.-II. Ford, New York City. Dear Sir: We herewith enclose statement of the Export Shipping Company amounting to $2,004.67. This is for drilling machine and extras forwarded them on April 17th. We note from your favor that payment for this outfit will become due three weeks after the same is received at New York. We trust that you will take up this matter with the parties at the proper time and that you may be successful in making the collection. We are, respectfully yours, the Star Drilling Machine Company, per F. W. Fitch.”
It is claimed that these facts- justify the court in finding that the Star Drilling Machine Company gave to its general sales agent- authority to- do all things necessary to close this transaction and collect- the money in the usual and ordinary mode of transacting such business, and that in pursuance of such -authority the draft in question was executed, and the same not having been paid, the plaintiff elebted under the statute to treat the same as a promissory note given by the Star Drilling Machine Company, -and this action is to recover upon that note.-
If these facts will bear the construction claimed by the plaintiff, then the defendant -authorized its agent to sell this particular bill of goods :and give its note to the purchaser therefor. Such a transaction would appear to be very unusual. The natural and ordinary way of doing business would have been for .the purchaser, the Export Shipping Company, to have drawn the draft payable to the Star Drilling Machine Company. So that *453 if the facts of the case gave authority to the agent to sign any sort of a negotiable instrument in order to obtain the money for the sale, it only authorized such an instrument as according to the usual and ordinary way of doing business would result in obtaining the money. If the agent was to draw the draft, it should have been drawn against the purchaser, which the evidence shows to have been the Export Shipping Company, and surely should not have been drawn in their favor.
But in reference to negotiable instruments purporting to be issued by an agent of a corporation when reliance is had upon express authority, the authorities all .agree that there must be clear proof that the agent is vested with power to make and indorse such instruments; in other words, that the power' so granted is subject to strict interpretation and must be exercised in strict conformity with the terms thereof.
On the whole, the court finds that the plaintiff has not sustained the burden of proving that the agent in this case had authority to execute the instrument in question, and for that reason no recovery can be had in this suit.
On the other issue, the evidence showed that there were some material changes made in this instrument after it was executed and delivered by the agent of the defendant company. There was no evidence offered on behalf of the plaintiff to establish the fact that these changes were made before the paper reached its hands and that it was an innocent purchaser in due course. The presumption would be under the evidence as it was introduced that the changes, or at least one of them, was made with the approval and. consent of the plaintiff. But .as to this issue since the case was submitted to the court application has been made on behalf of the plaintiff to hold the case open until depositions can be taken for the purpose of establishing the fact that the alterations were made without the knowledge of the plaintiff and before it purchased the instrument in due course.
In the depositions already taken opportunity was given to the plaintiff to produce evidence on this subject, the agent of the plaintiff company who negotiated the purchase of the bill having been examined, and that examination took place after witnesses *454 had been examined by the defendant showing that the bill had been altered after execution .and delivery by its agent.
Under such circumstances the court does not feel that it would be right to put the defendant to further expense in the matter, especially after the court had reached the conclusion that the judgment should be in favor of the defendant on the other issue. After proof had been made by deposition long before the trial that there had been material .alterations, it was the duty of the plaintiff to produce its evidence showing that it was an innocent holder after the' alterations had been made; and having failed to do it, it ought not at this late day be granted what is in effect a new trial on the ground of newly-discovered evidence, when such newly-discovered evidence was in the possession of the party all the time.
Judgment may be entered for defendant and proper exceptions preserved.